[No. 517.   January 4, 1893.]

# JOHN W. TERRY ET AL., APPELLEES, v. J. S. MARTIN, APPELLANT.

RECEIVERS, POWER AND AUTHORITY OF—CLAIM FOR SERVICES.—A receiver, placed in charge of the property and effects of a store, pending litigation in reference thereto, being an officer of the court in whose custody such property and effects are while under his control, has no right, in the absence of express authority from the court, or any showing that the character of the business was such as to imperatively demand it, to open and continue the business of the store, and an office in connection therewith, and pay rent, clerk hire, etc., and a claim presented by him for such rent, services, etc., will be properly refused.

ID.—ATTORNEYS' FEES.—While a receiver may, under certain circumstances, employ counsel to advise him, yet, if he does so, he must be able to show a necessity for such employment, or a claim for attorneys' fees for such services will not be allowed.

APPEAL, from a decree in favor of defendants, from the Fifth Judicial District Court, Socorro County. Decree affirmed.

The facts are stated in the opinion of the court.

JOHN S. SNIFFEN and W. E. KELLY for appellant.

JAMES G. FITCH for appellees.

When a court directs the manner and terms of a sale, a receiver is held to a strict compliance with them, so far as it is possible. Beach on Receivers, secs. 730, 731.

Courts of equity are very reluctant to undertake to carry on a business through a receiver; they only do so when it is absolutely necessary to prevent a sacrifice of the property, and then only until it can be sold. Martin v. Van Schaick, 4 Paige, Ch. 479; High on Receivers, secs. 36, 480.

In England there is a well established distinction between a receiver and a manager, the latter only being authorized to carry on business. Lindley on Partnership [5 Eng. Ed.] 545; Gardner v. L. C. & D. R'y Co., 2 Ch. 201; In Re Manchest & Milford R'y, 14 Ch. D. 653.

In this country, even when a receiver is vested with such authority, he has no right to make expenditures which will seriously diminish the fund, without an order of court. Hooper v. Winston, 24 Ill. 353.

A receiver has no right, in the absence of express authority, to carry on business at all, and if he does so he will be held responsible for all losses. Beach on Receivers, sec. 284; McCay v. Black, 14 Phila. 635.

In the absence of statutory provisions, the court appointing the receiver has authority to determine the amount of his compensation; and, when he has been guilty of negligence or misconduct, it can reduce it, or refuse to allow him any compensation. Beach on Receivers, secs. 755, 758; High on Receivers, sec. 818.

It is the province of the lower court to pass upon the accounts and determine the compensation of its own officer, over whose conduct it exercises supervision, and its judgment is entitled to great weight upon appeal. Beach on Receivers, sec. 774; High on Receivers, 781; Hinckley v. Railroad Co., 100 U. S. 153; Stuart v. Boulware, 133 U. S. 708.

SEEDS, J.—From the record in this case it appears that, sometime in 1886, certain parties, by the names of Perkins and Southgate, were engaged in the drug business in Socorro, in this territory. They became indebted to one Terry, and possibly others, and it became necessary to place their property in the hands of a receiver, pending the litigation in reference thereto. In November, 1886, the court appointed one Dr. J. S.

Martin the receiver of the property. He took posses-
sion of the goods, and made an inventory of the same,
according to which the drugs and fixtures were worth
about $2,500. It appears that the receiver opened the
store, and began selling goods from the store, and that
he occasionally made purchases to keep the stock
intact. We have been unable to find any specific author-
ity for such proceedings upon his part, and, if he
possessed it at all, it must have resulted by implication
from his position, or from his original appointment,
which is not set out in the record. It also appears
that he used the store as his office, and that he hired
his son, who was not a druggist, to be a clerk in the
store, at a salary of $45 per month. In the early part
of 1887, and before the receiver had opened the store,
the several parties to the litigation entered into an
agreement to have the property sold, and the court
made an order to that effect. The order contemplated
a sale in bulk, and an effort was made to comply with
the order, but the receiver refused the bid, for reasons
growing out of the objections of Terry, as he insists,
but which Terry denies. Afterward the receiver
opened up a retail drug store, as before recited, and
ran the same for four months, when the parties to the
litigation again got together, and agreed to have the
drugs stored in another building, as the expenses were
eating up the stock. The court made an order accord-
ingly. The record shows quite conclusively that dur-
ing the time in which the receiver was running the
drug store and his physician's office at the same place,
and while his son was acting as clerk, the sales only
averaged about $92 per month, while the expenses
were nearly that amount, not counting the receiver's
allowance, or his attorneys' fees, if they should be
allowed. It was a pure question of addition and sub-
traction as to how long this could be kept up before
all the assets would disappear, and the creditors be

confronted with a bill for thus dispensing with the trust property. In 1889 the receiver made an ex parte application to have the property sold, as the rent and deterioration were consuming it. The order was made, but, before the sale was made, the complainant Terry found out that the order had been made, and, by proper objections, prevented it. Afterward, in 1890, the receiver made his report, showing certain sales of the drugs, the expenditures, the money on hand, the outstanding debts, and asked an allowance for his services, and $150 for the services of his attorney. Exceptions were filed to the report, and the whole matter referred to a master to take testimony. Upon the filing of the master's report, the chancellor refused to allow a number of items claimed; as $180 for the son's services, $18 for going to Albuquerque to consult the court, $150 for lawyers' services, and various sums for rent, invoicing, etc.

After carefully considering the actions of all parties, as shown by the record, it is forcibly presented to us that this is a case in which the assets were deliberately squandered. It would seem as though the receiver thought they were placed in his hands for his pecuniary benefit. We are forced to believe that the parties to the litigation were acting all the time as if they must agree to some action to prevent the receiver from completely wasting the estate which was placed in his hands. The receiver is an officer of the court, and the property is in the custody of the court while under his control. His duty was to conserve such property, and, unless directly so authorized, or unless the character of the business was such as to imperatively require it, he had no authority to open a business, in which he could place his son, and run a physician's office in connection therewith. Beach,

RECEIVERS, power and authority of: claim for services.

Rec., secs. 1, 249, 257. We fail to find any authority which justified him in running the store.

The receiver is, under certain circumstances, justified in retaining counsel to advise him (Id. sec. 261); but, if he does so, he must be prepared to show the necessity. In this case he has not done so. It is a cardinal rule, in regard to matters of receivership, that the receiver is at all times subject to the control of the court. He is but a hand of the court, and all of his actions must pass under the watchful eye of the chancellor, and we think it a safe rule to presume that the action of the chancellor in passing upon the accounts of the receiver was correct, in the absence of a clear showing that it was either erroneous or illegal. In this case we think it is clear that his action was perfectly correct. The judgment of the lower court will be affirmed.